Good morning, your honors. Charles Fleischman appearing for the appellant. This case involves a complaint with three counts. The defendants object to the object of the complaint on the grounds that all three counts were in a previous federal action and therefore or were decided in a state court proceeding. The state court proceeding never decided any of these three because it never had jurisdiction to decide any of these three issues. They cannot decide a 502c claim, which is count one, nor can they decide a breach of fiduciary duty claim, which is count two, nor a 510 claim, which is count three. The ERISA statute is very explicit about who has jurisdiction to decide what, and state courts don't have jurisdiction to decide that. So they were not decided in the state court action. With regard to the first federal complaint, count one does indeed appear in the first federal complaint, but counts two and three do not because they were totally unknown to us or to the plaintiff. She was in pro per at that time. At the time of the filing of the first federal action, it wasn't until discovery in the inner pleater, which was long after the dismissal of the first federal action, that she discovered the Willis-Adele property settlement agreement. So there was no way that she could know about that. She wasn't even given that document until after the first federal action was dismissed. There was, counsel, an opportunity to interplead and litigate all claims relating to benefits in state court, right? The state court didn't have jurisdiction to hear those claims. Is it a benefits dispute that the state court decided? It decided the QDRO for my client. Right, so that's a benefits dispute, essentially. Yes, that's under 502A1B, right. And as part of count two in this case, or the second cause of action, aren't you challenging the benefits? No, no, it has nothing to do with my client's QDRO. That was for child support. This deals with her right to future pension when her husband dies. If he dies before, she's entitled to 50% of what he receives by way of pension. And by, so the two are two different. If I were to accuse a man of murdering A and accuse him of murdering B, if he got off on, was found not guilty of killing A, murdering A, that doesn't mean he would be not guilty of murdering B. Tell me what your theory is as to the second cause of action. The second cause of action, we were in a, they approved, the defendants approved the Willis QDRO, which awarded her $47,000 of Adele's pension, when in fact she had waived all but $7,000 in her property settlement agreement. And they have a duty, the plan and the attorneys, acting as fiduciaries, had a duty to check over the judgment in the Willis-Adele divorce to make sure that the proposed QDRO matched that judgment. There was no other judgment. There was no other DRO to match. That was it. And if they had looked at that, they would have seen, or maybe they did look at it, but they would have seen that she had waived $40,000 of her property settlement agreement. That was one-third of the money that Adele had in his pension, which means that my client will lose one-third of her pension if and when he dies before her. That's my theory. They had an absolute duty, a fiduciary duty, to check that over. Now, they're claiming that there was a stipulation in the interpleader that the plan could pay the QDRO for Willis. Well, it was too late to appeal that by the time we found out about the Willis-Adele property settlement agreement. We were never even a party to that lawsuit when it was time to appeal. So there was virtually no remedy that my client could obtain in state court. Also, the stipulation, I remember sitting in the room with Mr. Shackman and asking, is there something, because I was, why would they, first of all, I didn't understand what the interpleader was all about, but why would they want this stipulation? I mean, after all, she already had a DRO, I mean, a QDRO, Willis. It was already a final judgment. The law says that the first QDRO in time is the first in right. I couldn't understand why would they even ask me to stipulate? And I asked them, I said, is there something I should know? And they never told me that there was a, they made a mistake in awarding her $47,000 in the QDRO instead of seven. They had a duty to tell me. They are fiduciaries that owe my client, who was an alternate payee, a duty of loyalty, honesty, and to divulge facts that they think are important for her. And that's definitely important. That's one-third of her pension. And they never said a word. You started your argument indicating that the first cause of action was asserted in the prior litigation, and now it's being reasserted here. I take it there was no appeal of the dismissal of the prior action? No. No. Then why doesn't issue preclusion apply to bar the first cause of action from being reasserted in this case? Well, it was dismissed on the grounds of lack of jurisdiction that the case was pending in the superior court. And a dismissal on lack of jurisdiction isn't a dismissal on the merits. So we can bring in a later lawsuit. And that's what we did. We waited until the superior court matter was over and brought another lawsuit. And the circumstances had changed. The superior court had never decided the 502C1 claim. On that same cause of action, the first, I think, the defendant's position is, in addition, that it's barred by the statute of limitations anyway. Well, that's silly, because I think I laid that out in my reply brief, that she was always pursuing this 502C action. And she was just in the wrong court at the wrong times. And they kept shifting from one court to the next court. And that's what all those cases that I cite from this circuit were. So what's your position? Being in the wrong court told the statute? Yes. That's a Ninth Circuit position, I think. Well, what case? Well, they're all cited in my reply brief. I could get them for you. Reply brief? All right, that's fine. They're all in my reply brief. And they're in my reply brief, because that's when they raised the defense in there of statute of limitations. I would like to reserve the rest of my time, if I may. Thank you. Good morning. May it please the Court. My name is Myron Rumeld of the Proscar Firm. And we represent the appellee directors, trustees, of the Producer Writers Guilds of America Pension Plan. I've requested that three minutes of my time go to my co-counsel, who represents the attorney defendants. The principal issue on this appeal is whether the district court correctly ruled that Ms. Williams could not proceed with her claims, either because they had already been adjudicated previously in the prior federal court proceeding, or because they had been previously adjudicated in the state court proceedings. The claims asserted all arose from this dispute over how to carve up a pension that was earned by a plan participant, Mr. Adel, among his spouses and their dependents. Ms. Williams, as your honors know, pursued her interests for her benefit entitlements in multiple lawsuits in both state and federal court. First, she participated in the state court proceedings, and among other things, she tried to stop the payments to Ms. Willis. And when that didn't work, she filed the first of her federal court lawsuits asserting multiple claims for relief, all arising from that same dispute concerning what to do with Mr. Adel's pension benefit and how it should be divided. The district court dismissed those claims, finding that the competing claims for the same pension benefit all were properly entertained in state court. Ms. Williams then participated in the interpleader action in state court that we filed in an effort to ensure that the competing claims of all the parties could be addressed in the same forum. And then after Ms. Williams received an outcome in that interpleader action that she apparently wasn't satisfied with, she came back to federal court, which is this action, and at that point the district court judge decided that all her claims had been adjudicated in one form or another before. Now, we, the pension plan, have been obliged to defend or participate in all of these proceedings, and I think it's important to keep in mind that our role is really quite limited in these types of proceedings. We are effectively like a stakeholder. There's a pension benefit, in the ordinary course it belongs exclusively to our pensioner. It's not supposed to be alienated as a matter of law, but there is this carve-out that has to do with what we call quadros, qualified domestic relations orders, and if in the course of a matrimonial proceeding or the like, a state court issues an order that satisfies the conditions for a quadro, then the responsibility of the plan is to carry out those orders. That's it, and in a case like this one, the plan's role is really just to do what it can to make sure that there's an orderly process pursuant to this one pension benefit is somehow divided up in a way that makes sense, because obviously you're not supposed to end up in a result where there's more money awarded than that original pension benefit was to begin with, because that's the only source of everybody's money. So that's why, when we were back in state court, we filed this interpleader action, and I think it's significant in response to some of the arguments my adversary made, is during that interpleader action, the state court made clear that they were there to entertain any claims associated with how to carve up this pension benefit. So while it may be the case that in the first proceeding, Ms. Williams was going after child support payments coming out of this pension benefit, and in this more recent proceeding, she's going after her survivor benefits, which also come out of the pension benefit, the same immutable fact is true, which is the more money that goes to the other spouse, Ms. Willis, the less money that's available to her for these other benefits, whether it's one or the other, and it's precisely for that reason that all of that was supposed to take place in the same proceeding, and it did take place in the same proceeding. Did Your Honor's client take part in the interpleader proceedings in the state court on the merits? She took part with her counsel, and I think if Your Honors go through the transcript of the rather lengthy oral argument at the district court level, I think you'll see that opposing counsel did concede at the end that he was provided with all the materials necessary to see this prior matrimonial order that resulted in this dispute over how much the first spouse was supposed to receive, and he had his opportunity to challenge there if he thought the first spouse was getting too much money. We don't think his argument has much merit anyway, but that was the opportunity to present that issue. He's argued in this court that this whole state court proceeding shouldn't have taken place because the state court didn't have jurisdiction to hear an interpleader action. He's now, as he conceded, he appealed that argument to the state court of appeals. The state court of appeals correctly rejected that argument. There's no problem with the state court entertaining an interpleader motion under these circumstances, and more importantly, whether it's by interpleader motion or through some other process, there's clearly no dispute that state courts, it's the province of the state courts to determine how to carve up a spouse's pension benefits when there are divorce proceedings going on. Those are all matters for the state court to handle, and although it occurs within the overall umbrella of ERISA, ERISA's role is really just to specify the limited circumstances under which you can alienate a pension benefit, namely when there's a state court order that complies with ERISA's procedures. And that's exactly what happened here. Now, my adversary in his argument made the point that technically speaking, he's articulated claims that are federal court claims and not state court claims. But the second and the third claim, as I think Your Honour established, are really the same claim. They're a claim for a piece of that pie, a piece of Mr. Adele's pension benefit. He phrased it as a claim for breach of fiduciary duty or a claim under Section 510 of ERISA, but I think as the briefing below and the dialogue in front of the court made clear, he doesn't have a breach of fiduciary duty claim because he hasn't identified any fiduciaries in the first place. And when we pointed that out in his papers, he admitted that what he has is a claim for benefits, and a claim for benefits in this case, as Your Honour pointed out, is really an issue of how to divide up this pie because those are the only benefits that there are. It's this pension plan and it's how to divide it up. And that's exactly what the state court was doing. The district court correctly determined that the Section 510 claim is really a non-issue here because that has to do with some employer or somebody else  but when you're making a claim for benefits, that's a 502A1B claim, which in this instance is what the state court was deciding. And finally, with respect to the first of the three claims, the claim for information, the district court correctly ruled that that claim was dismissed for lack of jurisdiction and notwithstanding what my adversary says, his cases stand for the proposition that when the jurisdictional issue is taken up for the first time in state court, it may toll the statute of limitations. But here the federal court ruled several years ago that this claim was dismissed for lack of jurisdiction. Well, there was, it seems, several grounds in the first claim. The district court talked about Ricker-Fellman, younger abstention, and race judicata. Correct. And didn't really make clear which, if any, of those grounds he was relying on. I think what the district court in its ruling ended up doing was saying there isn't jurisdiction here because these matters are properly committed to the state court. I think the district court was focused on the fact that the principal claim seemed to be about how to carve up these pension benefits. The district court didn't specifically focus on the claim for information. Maybe it should have, but it was the plaintiff's responsibility to appeal then that argument if the plaintiff wanted to pursue that discrete claim for information and to appeal it then if it thought that there was a mistake in ruling. I suppose it was a younger abstention. I suppose that was the ground. Couldn't he wait till after the state court proceedings were exhausted? If the federal court had stayed pursuant to younger, I think he could have. But the court didn't stay. It dismissed. It issued a final dismissal with prejudice and that does have race, judicata effect, Your Honor. I'd like to... I've used up most of my colleague's time. All right. We'll give your colleague two minutes. All right. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court. J. David Sackman for the various attorney defendants. Just quickly, I want to point out that the beef that Williams, the appellant, seems to have with us is that we did not look behind the second... the quadro issued to the first wife in September 2012 because it was different from a judgment in 2000. But in fact, according to the cases, Brown and Mack that we've cited in our briefs, we are not supposed to go behind these family law matters even if it's supposedly a sham marriage. We have no basis for going behind that. In fact, she was actually served with the motion for the quadro to the first wife that she's complaining with about. She was served with that and that... and that's at SCR 152. And that... those papers mentioned the 2000 order that she's complaining about. So she was on notice. She had an opportunity then. She was served to contest that and look into it. And that was before the... her first complaint. Then again, I also want to point out it was incorrectly stated that... One thing I'm not clear about here. She was not served before the other wife got the first quadro order? She was served. Before the initial order? Yes. That motion was filed in state court in July 2012. She was served with that order which mentioned the older order. When you say the older order, isn't the older order the first order? The 2000 order. Yeah, the first order in the first wife's divorce. There's a lot of orders so it's very confusing. Okay. But she didn't... wasn't... didn't participate in the initial order, the 2000 order, right? That was before they were married. So the 2000 was the first wife's divorce. Okay. They were married subsequently and then now we have the first wife trying to get a quadro for her share and the second wife, the appellant here, was served with that and so the documents she's complaining about that were hidden from her or fraud were actually revealed to her in that motion and she had the opportunity then. She also had the opportunity in the interpleader to challenge that the interpleader dealt with any and all claims of the... as to the pension of Mr. Adele. You're representing the attorneys, right? Myself, Ms. Chadna, and our firm who are named in the second and third claims. Thank you. Thank you. My client was not given the... We were not given the divorce decree in the Willis marriage, the 2000 decree, until after the QDRO to Willis was approved by the court, approved by the plan, and approved by the lawyers who are named in this lawsuit. As a matter of fact, they didn't even get it. There's evidence now that they didn't even get that judgment until long after the QDRO for Willis was made. So they never checked to see if the QDRO matched the DRO and this court has held that it is the duty of the plan to make sure that the QDRO, that it okays, matches the DRO. And what we have here is a situation where my client went in to get a QDRO for child support only. She never challenged Willis' right to get her share of the community property from the pension. But she didn't know exactly what that was. She assumed, like I assumed the trial judge did and the plan did, that Willis was entitled to half the pension for the time that she was with Adele. In fact, nobody knew until they got the divorce decree that she was only entitled to $7,000, not $47,000. And then what we have is a cover-up, a total breach of fiduciary duty by the lawyers when they failed to inform me and my client and we were sitting in a room talking about the stipulation that there was an error in the Willis QDRO, which was, by the way, final at the time we got the divorce decree from the Willis-Adele matter. There was no other way to proceed other than the way we're proceeding now. And certainly, when my client is faced with a QDRO that is approved by the plan, approved by the judge, approved by the lawyers, all of whom are neutral. This is an interpleader in the state court. They're all neutral. They all apparently are out there saying we have no axe to grind here. And in fact, they had an axe to grind and they didn't tell her about it. And the axe to grind was that they screwed up. They messed up the Willis QDRO. And that's what my client's here complaining about in counts two and three. Also, well, the only thing my client was complaining about in the first federal action, if you read that trope all the way through and it's like a stream of consciousness,      to get a QDRO approved by the state court and she was trying to get a QDRO approved by the state court to get a QDRO for child support and when she was finally about to get a QDRO for child support they all of a sudden said, hey, there's a $47,000 prior claim to the pension. And she was upset because they were, this prior claim was years and years before made by Willis. And she was upset because there's only an 18-month hold on the money. And they held the money, the $47,000 for years and they weren't going to give it to her. They were going to put Willis ahead of her with regard to the QDROs. And then in the end she said, okay, I can go along with that. And she's not complaining about the Willis QDRO as far as its legitimacy as a final judgment. She's complaining that these guys never should have given Willis the QDRO. They never should have approved it. They never should have asked the judge to approve it. And they should have warned her when she had a chance to do something maybe at the interpleader that, hey, we screwed up. But they didn't. And they were asked. I'll submit it. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Tashima, Nguyen